```
                   UNITED STATES DISTRICT COURT

                   MIDDLE DISTRICT OF LOUISIANA

NEW ORLEANS ELECTRICAL                            MISC. ACTION
PENSION FUND, ET AL.

VERSUS

KNIGHT ENTERPRISES OF LOUISIANA,                  NO. 06-0035-A-M2
D/B/A KNIGHT ENTERPRISES, ET AL.
```

<u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, July 21, 2008.

                                         _____
                                         **MAGISTRATE JUDGE CHRISTINE NOLAND**

```
                    UNITED STATES DISTRICT COURT

                    MIDDLE DISTRICT OF LOUISIANA
```

NEW ORLEANS ELECTRICAL                                MISC. ACTION
PENSION FUND, ET AL.

VERSUS

KNIGHT ENTERPRISES OF LOUISIANA,                      NO. 06-0035-A-M2
D/B/A KNIGHT ENTERPRISES, ET AL.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the plaintiffs' Motion to Traverse Garnishment Interrogatories. Rec.doc.no. 10. On December 3, 2007, a show cause hearing was held, at which hearing representatives of the parties testified regarding their respective claims and assertions.

PROCEDURAL BACKGROUND

On July 26, 2006, the plaintiffs in this proceeding, New Orleans Electrical Pension Fund, New Orleans Electrical Health & Welfare Fund, New Orleans Electrical Joint Apprenticeship & Training Fund, National Electrical Benefit Fund, National Labor Management Cooperative Fund, Local 130 of the International Brotherhood of Electrical Workers, AFL-CIO, and Local 130 of the International Brotherhood of Electrical Workers - Cope Fund (hereinafter referred to collectively as "the Pension Funds"), registered a foreign judgment originating in the United States District Court for the Eastern District of Louisiana. This judgment reflected an amount due and owing to the plaintiffs from the judgment-debtor defendant, Al Knight, d/b/a Knight Enterprises (hereinafter referred to as "Knight Enterprises"), in amounts totaling $104,130.07.

In an effort to thereafter collect upon its judgment, the plaintiff caused to be served upon the garnishee herein, BE&K Government Group, Inc. (hereinafter referred to as "BE&K"), garnishment interrogatories inquiring as to any amounts in the possession of the garnishee which may

have been due and owing to the judgment-debtor, Knight Enterprises, at the time of service of the interrogatories. These interrogatories were answered in due course by the garnishee, with the garnishee denying any liability to the judgment-debtor. Upon the filing of a motion to traverse these answers, the Court set the matter for a hearing, and directed the garnishee to appear and show cause why its answers to the interrogatories should not be set aside and why it should not be ordered to pay funds in its possession owed to the garnishor at the time that the interrogatories were served upon it.

## DISCUSSION

This matter is brought pursuant to rule 64 of the Federal Rules of Civil Procedure, which provides that garnishment proceedings brought in the federal district courts may be brought in the manner provided by the law of the state in which the district court is located. Under Louisiana law, the mover on a motion to traverse garnishment interrogatories bears the burden of proving the falsity of a garnishee's absolute denial that he possesses any property of, or is indebted to, the judgment debtor. See <u>Arkla, Inc. v. Maddox and May Brothers Casing Service, Inc.</u>, 624 So.2d 34 (La. App. 2nd Cir. 1993); <u>New Orleans Flooring Supply, Inc. v. Hebert</u>, 549 So.2d 436 (La. App. 5th Cir. 1989). Accordingly, in the instant case, it was incumbent upon the judgment-creditor Pension Funds to come forward with evidence to establish its entitlement to recovery from BE&K.

At the hearing on the rule to show cause, counsel for the Pension Funds presented no witnesses but, without objection, introduced documentary evidence reflecting both the existence and terms of a contract entered into between the judgment-debtor and BE&K, and reflecting that the judgment-debtor, Knight Enterprises, submitted an

invoice to the garnishee, BE&K, in November, 2005, in the amount of $171.054.92. According to counsel for the Pension Funds, this invoice was never paid, thereby ostensibly supporting the Pension Funds' claim that BE&K had in its possession moneys due and owing to the judgment-debtor at the time that garnishment interrogatories were served upon BE&K. Notwithstanding, counsel for the Pension Funds conceded in argument that the amount claimed in the invoice was in fact disputed by BE&K, that even Knight Enterprises, in its cover letter submitted with the invoice, recognized that some of the amounts claimed in the invoice were not supportable, and that, at best, BE&K admitted to owing only $38,071.73 to Knight Enterprises on the basis of the contract between the parties.

After presentation of the Pension Funds' case, and notwithstanding the paucity of evidence presented, BE&K introduced additional documentary evidence as well as the testimony of a corporate representative of BE&K. Based upon this testimony and the documentary evidence presented by both parties, it appears that the following factual history may be presented.

In September, 2005, after the advent of Hurricane Katrina, BE&K was contracted to perform construction and repair work at the Naval Air Station in Belle Chasse, Louisiana. In furtherance of this contract, BE&K subcontracted with Knight Enterprises to perform electrical work under this contract. After approximately three weeks, however, BE&K determined that it could better perform the electrical work with its own employees, and it terminated the services of Knight Enterprises as was allowed under the subcontract. At the time of termination of this

subcontract, all invoices submitted by Knight Enterprises had been paid by BE&K.[1]

Upon termination of the subcontract, Al Knight apparently became disgruntled and began making comments and assertions in public and in the national press with regard to BE&K, specifically to the effect that BE&K was utilizing the services of illegal aliens in lieu of Knight Enterprises employees. This resulted in substantial adverse publicity and in an investigation by federal immigration officials. Ultimately, it was determined that the claims by Al Knight and Knight Enterprises were unfounded. In addition, employees of Knight Enterprises brought a lawsuit in state court against BE&K complaining of the alleged hiring of illegal aliens. Upon removal of this lawsuit to federal court in New Orleans, Louisiana, additional claims were asserted of racial discrimination and of tortious interference with contract, and demands were made for mental and emotional damages allegedly sustained by the employees. Ultimately, after substantial legal proceedings, judgment was entered in favor of BE&K, dismissing the claims of the employees.

During the months after termination of the subcontract, BE&K addressed several requests to Knight Enterprises requesting a final invoice for services provided. Finally, by correspondence dated November 21, 2005, Al Knight submitted an invoice to BE&K in the amount of $171,054.92, which invoice has become the subject of the instant garnishment claim. In this correspondence, Al Knight conceded that some of the items asserted in the invoice were outside of the contractual agreement between Knight Enterprises and BE&K and were to be paid "solely

---

[1] It appears, however, that Knight Enterprises did not fulfill its obligation to make corresponding payments to the pension funds of its employees, thereby ultimately leading to the instant claim by the Pension Funds against Knight Enterprises.

at [the] discretion" of BE&K.  Upon receipt of this invoice, representatives of BE&K meticulously reviewed the invoice and responded to Knight Enterprises, in correspondence dated April 25, 2006, that only $38,071.78 of the invoice could be justified and would be recognized.  This correspondence further informed Al Knight that this sum of approximately $38,000.00 was being withheld and retained by BE&K under the terms of the contract which provided for indemnity and set-off relative to amounts owed by Knight Enterprises to BE&K under the contract.

As pertinent to BE&K's claim of set-off and indemnity, the contract between Knight Enterprises and BE&K specifically provided that Knight Enterprises "shall not publicize or make news releases or advertisements concerning the work without ... express written approval".  Further, the contract included an indemnity provision which provided as follows:

> Subcontractor [Knight Enterprises] agrees to protect, indemnify, defend and hold harmless Contractor [BE&K] ... from and against:
>
>> a. Any and all liabilities, losses, claims (including claims relating to liability contractually assumed by contractor, or causes of action due to (I) Subcontractor's failure to comply with any provisions of this subcontract or (ii) injury (including death) to persons (including but not limited to employees of ... Contractor, or Subcontractor ....

The contract is clear that this indemnity obligation was to be liberally interpreted and, "shall not be limited in any way by any limitation on the amount or type of damages ... and shall apply to the fullest extent permitted by law regardless of legal theory or alleged negligence of the party to be indemnified", excepting only the "sole negligence" of BE&K.  Further, the contract provided that BE&K was entitled to withhold and deduct from any amounts owed to Knight Enterprises amounts owed by Knight Enterprises to BE&K under the contract or "under any other obligation" of Knight Enterprises.

Turning to a substantive review of the parties claims, it appears clear, initially, and is virtually conceded by the judgment creditors, that the amount at issue in this case is not the invoiced amount of $171,054.92 but rather the $38,071.78 which BE&K admits to having owed to Knight Enterprises at one time. The judgment creditor has not seriously attempted to meet its burden of proof as to any other amount, and the Court finds, therefore, that the only issue before the Court is as to whether the $38,000.00 was due and owing from BE&K to Knight Enterprises at the time that BE&K was served with the garnishment interrogatories.

Turning to this remaining claim, the Court further finds that the judgment creditor has not established the liability of BE&K as to the amount claimed.[2] The contract between BE&K and Knight Enterprises clearly provided that Knight Enterprises had an obligation to indemnify BE&K from any losses, claims or causes of action arising out of either Knight Enterprise's failure to comply with any provision of the contract or out of claimed injuries to persons, including employees of Knight Enterprises. Further, the contract provided that the indemnity clause was self-executing and that BE&K had the right to withhold, deduct and set-off any amounts owing to BE&K from Knight Enterprises under the contract or "under any other obligation" of Knight Enterprises. According to the evidence introduced at the hearing, Al Knight clearly violated the terms of the contract when he openly publicized his grievances relative to the BE&K contract, including specifically his claim, apparently false, that BE&K was employing illegal aliens to

---

[2] The Court rejects the Pension Funds' contention that merely by not filing a formal "response" to the motion to traverse, BE&K waived its right to contest the Pension Funds' claims.

perform electrical work originally contracted for with Knight Enterprises. This claim was much publicized in the press and through local and national news channels. As a result of this claim, an investigation was commenced by federal immigration officials, which investigation ultimately revealed no fault or liability on the part of BE&K. In addition, as a result of the false assertions regarding alleged illegal hiring practices, Knight Enterprise employees commenced a lawsuit seeking, <u>inter alia</u>, recovery for such alleged wrongful hiring practices and seeking monetary recovery for personal injury damages, including "suffering, ... loss of enjoyment of life, mental anguish, medical costs, and emotional distress". This lawsuit was later amended to assert explicit claims arising in tort and was also ultimately found to be groundless. Notwithstanding, BE&K was required to retain attorneys in defense of the referenced lawsuit, and BE&K notified Knight Enterprises in writing, by correspondence dated November 22, 2005, that BE&K was exercising its right of indemnity and set-off relative to said costs of defense. The evidence adduced at the hearing further reflects that BE&K incurred legal expenses exceeding the referenced $38,071.78 prior to service of the garnishment interrogatories on BE&K.[3]

Based upon the foregoing, the Court finds that the judgment creditors have not met their burden of proof and established that BE&K was liable to the judgment debtor herein, Knight Enterprises, on the date

---

[3] The Pension Funds attempt to make much of their assertion that the judgment debtor, Knight Enterprises, had a subsisting cause of action against BE&K under the final invoice and could have filed a lawsuit against BE&K seeking recovery of the $38,071.78. However, as pointed out by BE&K, "a garnishing creditor acquires no greater right against the garnishee than the judgment debtor would have had if he had sought recovery directly against the garnishee. <u>Board of Trustees of the East Baton Rouge Mortgage Finance Authority v. All Taxpayers</u>, 361 So.2d 292 (La. App. 1st Cir. 1978).

of service of the garnishment interrogatories. Accordingly, it is appropriate that the motion to traverse garnishment interrogatories be denied.

### RECOMMENDATION

It is recommended that the motion to traverse garnishment interrogatories, rec.doc.no. 10, be denied and that the garnishee, BE&K Government Group, Inc., be relieved of any and all liability to the judgment creditors herein.

Signed in chambers in Baton Rouge, Louisiana, July 21, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**